# COMMONWEALTH OF VIRGINIA




**EXHIBIT**
_A_

### NORFOLK CIRCUIT COURT
Civil Division
150 ST. PAUL'S BLVD 7TH FLOOR
NORFOLK VA 23510
(757) 769-8539

Summons

To: MARCUS PORTER
3341 ARGONNE AVE
NORFOLK VA 23509

Case No. 710CL19006091-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Monday, June 17, 2019

Clerk of Court: GEORGE E. SCHAEFER III

by _____
(CLERK/DEPUTY CLERK)

Instructions:

Hearing Official:

Attorney's name:   DEANS, ALASTAIR
757-412-9026

# COVER SHEET FOR FILING CIVIL ACTIONS
COMMONWEALTH OF VIRGINIA

Case No. ........................................
(CLERK'S OFFICE USE ONLY)

Norfolk City ......................................... Circuit Court

Joseph Covell Brown
PLAINTIFF(S)

v./In re: Marcus Porter, Norfolk State University,
DEFENDANT(S)

Tracci K. Johnson and the Commonwealth of Virginia

I, the undersigned [ ] plaintiff [ ] defendant [x] attorney for [x] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

## GENERAL CIVIL

**Subsequent Actions**
[ ] Claim Impleading Third Party Defendant
   [ ] Monetary Damages
   [ ] No Monetary Damages
[ ] Counterclaim
   [ ] Monetary Damages
   [ ] No Monetary Damages
[ ] Cross Claim
[ ] Interpleader
[ ] Reinstatement (other than divorce or driving privileges)
[ ] Removal of Case to Federal Court

**Business & Contract**
[ ] Attachment
[ ] Confessed Judgment
[ ] Contract Action
[ ] Contract Specific Performance
[ ] Detinue
[ ] Garnishment

**Property**
[ ] Annexation
[ ] Condemnation
[ ] Ejectment
[ ] Encumber/Sell Real Estate
[ ] Enforce Vendor's Lien
[ ] Escheatment
[ ] Establish Boundaries
[ ] Landlord/Tenant
   [ ] Unlawful Detainer
[ ] Mechanics Lien
[ ] Partition
[ ] Quiet Title
[ ] Termination of Mineral Rights

**Tort**
[ ] Asbestos Litigation
[ ] Compromise Settlement
[ ] Intentional Tort
[ ] Medical Malpractice
[ ] Motor Vehicle Tort
[ ] Product Liability
[ ] Wrongful Death
[x] Other General Tort Liability

## ADMINISTRATIVE LAW
[ ] Appeal/Judicial Review of Decision of (select one)
   [ ] ABC Board
   [ ] Board of Zoning
   [ ] Compensation Board
   [ ] DMV License Suspension
   [ ] Employee Grievance Decision
   [ ] Employment Commission
   [ ] Local Government
   [ ] Marine Resources Commission
   [ ] School Board
   [ ] Voter Registration
   [ ] Other Administrative Appeal

## DOMESTIC/FAMILY
[ ] Adoption
   [ ] Adoption – Foreign
[ ] Adult Protection
[ ] Annulment
   [ ] Annulment – Counterclaim/Responsive Pleading
[ ] Child Abuse and Neglect – Unfounded Complaint
[ ] Civil Contempt
[ ] Divorce (select one)
   [ ] Complaint – Contested*
   [ ] Complaint – Uncontested*
   [ ] Counterclaim/Responsive Pleading
   [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
[ ] Separate Maintenance
   [ ] Separate Maintenance Counterclaim

## WRITS
[ ] Certiorari
[ ] Habeas Corpus
[ ] Mandamus
[ ] Prohibition
[ ] Quo Warranto

## PROBATE/WILLS AND TRUSTS
[ ] Accounting
[ ] Aid and Guidance
[ ] Appointment (select one)
   [ ] Guardian/Conservator
   [ ] Standby Guardian/Conservator
   [ ] Custodian/Successor Custodian (UTMA)
[ ] Trust (select one)
   [ ] Impress/Declare/Create
   [ ] Reformation
[ ] Will (select one)
   [ ] Construe
   [ ] Contested

## MISCELLANEOUS
[ ] Amend Death Certificate
[ ] Appointment (select one)
   [ ] Church Trustee
   [ ] Conservator of Peace
   [ ] Marriage Celebrant
[ ] Approval of Transfer of Structured Settlement
[ ] Bond Forfeiture Appeal
[ ] Declaratory Judgment
[ ] Declare Death
[ ] Driving Privileges (select one)
   [ ] Reinstatement pursuant to § 46.2-427
   [ ] Restoration – Habitual Offender or 3rd Offense
[ ] Expungement
[ ] Firearms Rights – Restoration
[ ] Forfeiture of Property or Money
[ ] Freedom of Information
[ ] Injunction
[ ] Interdiction
[ ] Interrogatory
[ ] Judgment Lien-Bill to Enforce
[ ] Law Enforcement/Public Official Petition
[ ] Name Change
[ ] Referendum Elections
[ ] Sever Order
[ ] Taxes (select one)
   [ ] Correct Erroneous State/Local
   [ ] Delinquent
[ ] Vehicle Confiscation
[ ] Voting Rights – Restoration
[ ] Other (please specify)

[x] Damages in the amount of $ 10,000,000.00 .................... are claimed.

June 14, 2019
DATE

*Alastair C. Deans*
[ ] PLAINTIFF   [ ] DEFENDANT   [x] ATTORNEY FOR   [x] PLAINTIFF
                                 [ ] DEFENDANT

Alastair C. Deans
PRINT NAME

P.O. Box 13915, Chesapeake VA 23325
ADDRESS/TELEPHONE NUMBER OF SIGNATOR

(757) 412-9026

alastaircdeans@gmail.com
EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

FORM CC-1416 (MASTER) PAGE ONE 07/16

FILED
JUN 14 2019
NORFOLK CIRCUIT COURT CLERK
BY _____ D.C.

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

VIRGINIA:

IN THE CIRCUIT COURT OF THE CITY OF NORFOLK

JOSEPH COVELL BROWN,         )
                          )
       Plaintiff,       )

                       )

         v.          )    No. CL19.009/

MARCUS PORTER          )
In his individual capacity,   )
3341 Argonne Ave.      )
Norfolk, Va 23509      )
(City of Norfolk)       )

                    )
        and      )

NORFOLK STATE UNIVERSITY, )
SERVE:   Pamela F Boston  )
        University Counsel  )
        700 Park Ave. Suite 101 )
        Norfolk, Va 23509  )
        (City of Norfolk)  )

        and      )

THE BOARD OF VISITORS OF )
NORFOLK STATE UNIVERSITY, )
SERVE:   Pamela F Boston  )
        University Counsel  )
        700 Park Ave. Suite 101 )
        Norfolk, Va 23509  )
        (City of Norfolk)  )

        and      )

THE COMMONWEALTH OF VIRGINIA, )
SERVE:   Mark Herring   )
        Attorney General for the )
        Commonwealth of Virginia )
        900 E. Main St.  )
        Richmond, Va 23219  )
        (City of Richmond)  )

        and      )



FILED

NORFOLK CIRCUIT COURT CLERK
BY
D.C.

1

TRACCI K. JOHNSON                          )
In her individual capacity,                )
9518 3rd Bay St. Unit 125                  )
Norfolk, Va 23518                          )
(City of Norfolk)                          )
                                           )
                    Defendants.            )

## COMPLAINT

Plaintiff, Joseph Covell Brown, in support of his Complaint against Marcus Porter,

Norfolk State University, the Board of Visitors of Norfolk State University, the Commonwealth

of Virginia, and Tracci K. Johnson states the following:

## NATURE OF THE ACTION

1.      Plaintiff seeks damages for the violation of his due process rights by government

officials acting under color of law in clear violation of established standards.

2.      Plaintiff seeks damages for the gender discrimination against him by government

officials acting under color of law in clear violation of established standards.

3.      Plaintiff seeks damages for the violation of his freedom of speech rights by

government officials acting under color of law in clear violation of established standards

4.      Plaintiff seeks damages for the violation of his due process rights and gender

discrimination by government entities.

5.      Plaintiff seeks damages for breach of contract.

## THE PARTIES

6.      Plaintiff Joseph Covell Brown (hereinafter "Brown"), is a citizen and resident of

New Jersey.

7.      Brown attended NSU as a student from August 2014 through June 2017.

8.      Brown is a member of the Muslim faith.

2

9.    Marcus Porter (hereinafter "Porter") was an official at Norfolk State University at all times relevant to this complaint.

10.    Upon information and belief, Defendant Porter was the Assistant Director of Student Conduct at Norfolk State University at all times relevant to this complaint.

11.    Norfolk State University (hereinafter "NSU"), is a public institution pursuant to Va. Code Sec. §23.1-1900 *et seq.*

12.    Defendant NSU receives federal funding.

13.    Upon information and belief, Defendant NSU's Federal School Code (also known as its Title IV Institution Code) is 003765.

14.    The Board of Visitors of Norfolk State University composes a corporation organized and existing under the laws of the Commonwealth of Virginia, Va. Code §23.1-1900 *et seq.*, under the name and style of "The Visitors of Norfolk State University," formed for the purpose of establishing and maintaining the provisions and duties of NSU's teachers, staff and agents; and at all times relevant to this complaint, maintaining, operating and directing the affairs of NSU (as used herein, the Board of Visitors of Norfolk State University and Norfolk State University are referred to collectively as "NSU").

15.    Plaintiff Brown filed a timely notice of claim against the Commonwealth of Virginia (hereinafter "The Commonwealth") as required by Va. Code § 8.01-195.6.

16.    Tracci K. Johnson (hereinafter "Johnson") was an official at NSU at all times relevant to this complaint.

17.    Upon information and belief, Defendant Johnson was the Dean of Students at all times relevant to this complaint.

3

18.     This Court has jurisdiction over these claims because all transactions and occurrences relevant to this complaint occurred in Norfolk, Virginia.

## BACKGROUND

19.     In order to pay his tuition at NSU, Plaintiff Brown took, and remains responsible for the repayment of, student loans with interest.

20.     In 2015, Plaintiff Brown was placed on disciplinary probation for the 2016 to 2017 academic year.

21.     The aforesaid disciplinary probation ended in May of 2017.

22.     In June of 2017, Plaintiff Brown was completing the final paperwork for a lucrative study abroad program, to which he had been accepted and intended to undertake during his senior year at NSU.

23.     On or about June 14, 2017, Plaintiff Brown was suffering from sciatica in his left hip and could barely walk.

24.     NSU routinely publishes its disciplinary procedures online.  Those procedures in place during June of 2017 were printed on July 20, 2017 by Plaintiff's counsel and are attached hereto as "Complaint Exhibit 6".

## FACTS

25.     On or about June 11, 2017, Plaintiff Brown and his roommate Davonte' Smith (hereinafter "Smith") were texting each other.

26.     During the aforesaid texting, Brown and Smith were engaged in a conversation about food and dirty dishes in their room.

27.     During the aforesaid texting conversation, Brown and Smith were either physically present within the same room or in adjoining rooms.

28.     Evidence available to NSU officials indicated that Smith considered the texting conversation to be playful in nature.

29.     During this texting conversation, Plaintiff Brown allegedly texted the phrase "Text me again and im breaking your jaw."

30.     Upon receipt of the aforementioned text, Smith texted Brown again.

31.     Brown did not break Smith's jaw.

32.     Three days later, on June 14, 2017, Defendant Porter transmitted a notice to Brown of an alleged violation of the NSU's Code of Student Conduct (a copy of said notice is attached hereto as "Complaint Exhibit 1").

33.     Defendant Porter transmitted the aforesaid Notice to Plaintiff Brown via email, at about 4:58 p.m. on June 14, 2017.

34.     The aforesaid Notice required Brown to vacate his residence hall no later than 7:00 p.m. on June 14, 2017.

35.     Pursuant to the aforesaid notice, Brown was given approximately one hundred and twenty-two minutes to receive the email, read it, pack all of his possessions, find alternative housing, arrange transportation and vacate his dormitory room.

36.     At the time the aforesaid notice was transmitted, Brown was working in an administrative office at NSU.

37.     When Brown finished work on June 14, 2017, he received the aforesaid notice and barely managed to rush to his dormitory room and successfully vacate it within the cursory deadline.

5

38.    Though Brown vacated his dormitory room prior to the deadline, he had to abandon many of his possessions, and was unable to arrange transportation or alternate housing for the evening.

39.    With nowhere else to go, Plaintiff Brown spent a restless night in the waiting room of the NSU Campus Police Station, tormented by pain from his sciatica after having to abandon his medications along with other possessions in his dormitory room.

40.    On the morning of June 15, 2017, at approximately 8:57 a.m., Defendant Porter transmitted a Second Notice Letter "to schedule a meeting to discuss the investigation of a report...that [Brown] violated section(s) of the Code of Student Conduct." (a copy of said notice letter is attached hereto as "Complaint Exhibit 2")

41.    The aforesaid Second Notice Letter indicated that the conduct conference would be at the NSU Campus Police Station at 10:00 a.m. on June 15, 2017.

42.    At the time the notice email was sent, Plaintiff Brown was still at the NSU Campus Police Station.

43.    There is no indication that Brown saw or read the email with the attached Notice Letter during the sixty-three minute interval between transmission and the conduct conference.

44.    Upon information and belief, Defendant Porter met Plaintiff Brown at the NSU Campus Police Station around 10:00 a.m. on June 15, 2017.

45.    Upon information and belief, Defendant Porter and NSU Campus Police Officers questioned Plaintiff Brown at the NSU Campus Police Station around 10:00 a.m. on June 15, 2017.

6

46.     Upon information and belief, during the aforesaid questioning, Defendant Porter asked Plaintiff Brown if he is Muslim, to which inquiry Brown affirmed that he is.

47.     There is no indication that any witnesses were present for the conduct conference.

48.     There is no indication that any counsel, support person or advisor was present to speak for or give advice to Brown at the conduct conference.

49.     There is no indication that Brown presented any defense at the conduct conference.

50.     There is no indication that specific allegations against Brown and the potential consequences were explained to Brown before or during the conduct conference.

51.     Plaintiff Brown was not afforded a reasonable opportunity to assess the accusations, formulate a defense, contact counsel, contact witnesses or otherwise prepare for a hearing.

52.     On June 15, 2017, the same day as the aforesaid conduct conference, Defendant Porter sent a Resolution Letter to Plaintiff Brown via email, informing Brown that he was being held responsible for "violation of the Code of Student Conduct specifically, No. 20-Threatening Behavior (Probation Violation)." (a copy of this Resolution Letter is attached hereto as "Complaint Exhibit 3")

53.     The aforesaid Resolution Letter informed Brown that he was being expelled.

54.     Until receipt of the Resolution Letter, Brown had received no written notice that he was being charged with probation violation.

55.     Until receipt of the Resolution Letter, Brown had received no written notice that expulsion was a likely sanction.

7

56.     Pursuant to NSU's posted disciplinary procedures, violations punishable by "expulsion, suspension and/or removal from housing" must be referred by the student conduct officer "to the Student Conduct Board for formal resolution through an administrative hearing."

57.     Pursuant to NSU's posted disciplinary procedures, the formal resolution process contains more procedural safeguards to an accused student than does the informal resolution process.

58.     Brown did not receive the additional procedural safeguards that should have been afforded to him as a student accused of conduct punishable by "expulsion, suspension and/or removal from housing."

59.     It is unlikely that an objectively reasonable fact finder, aware of the context of the texting conversation, would have interpreted the text message in question as a true threat.

60.     Expulsion, and all of its attendant consequences, is a disproportionate punishment to the conduct alleged.

61.     Throughout the course of the disciplinary proceedings against Brown, Defendant Porter acted as investigator, fact finder and decision maker.

62.     Among other reasons, Brown was denied a fair and impartial hearing because Defendant Porter assumed the emphatically separate roles of investigator, fact finder and decision maker during the proceedings.

63.     Less than twenty-four hours elapsed between the transmission of notice to Brown and the decision to expel Brown.

64.     Plaintiff Brown filed an Appeal Form on June 22, 2017.

65.    The grounds for Plaintiff Brown's appeal included: a determination of "whether the conduct conference/hearing was conducted fairly and in conformity with prescribed procedures"; consideration of "new evidence unavailable during the original conduct conference/hearing"; and, consideration of "whether the sanctions imposed were disproportionate to the violation."

66.    Plaintiff Brown's appeal letter indicated that a witness had been present during the texting conversation.

67.    NSU sent an Appeal Response on June 28, 2017 (attached hereto as "Complaint Exhibit 4") indicating that Plaintiff Brown's appeal was denied.

68.    The Appeal Response, dated June 28, 2017, indicated that denial of Brown's appeal was final.

69.    NSU's Appeal Response Rationale (attached hereto as "Complaint Exhibit 5") indicates:

   a.   that the Appeal Conference was held on June 15, 2017;

   b.   that Defendant Johnson was the Appeal Officer at the Appeal Conference; and

   c.   that Plaintiff Brown attended the Appeal Conference via email.

70.    NSU's Appeal Response Rationale did not address the issue of "whether the conduct conference/hearing was conducted fairly and in conformity with prescribed procedures."

71.    NSU's Appeal Response Rationale did not address "new evidence unavailable during the original conduct conference/hearing."

72.    NSU's Appeal Response Rationale arguably concluded that expulsion was not disproportionate to the conduct at issue, but only after including references to prior

9

conduct that was not at issue in the Notice sent by Defendant Porter on June 15, 2017, as well as references to the language and content of Plaintiff Brown's appeal letter.

73.     Pursuant to an attorney request for documents, NSU produced a Complainant's statement, signed and dated June 14, 2018[1], more than a year after the incident and almost a year to the day after the conduct conference at which the statement should have been presented.

74.     The aforesaid Complainant's statement does not identify Joseph Brown.

75.     Pursuant to an attorney request for documents, NSU produced a document titled Investigative Rationale, purportedly from Defendant Marcus Porter's office, which is unsigned and undated.

76.     That the aforesaid Investigative Rationale asserts:

   a.  that Defendant Porter interviewed Plaintiff Brown at the NSU Campus Police Station on June 15, 2017;

   b.  that Plaintiff Brown was told that the text message violated the Student Code of Conduct; and

   c.  that Plaintiff Brown was told that the text message violated Brown's disciplinary probation.

77.     Brown was humiliated by the expulsion and suffered severe emotional stress as a result.

---

[1] The statement is handwritten, and dated at the top in handwriting by the Complainant as June 14, 2018. At the bottom, next to the Complainant's signature the Complainant dated his signature as June 14, 2018. Underneath the Complainant's signature, a Conduct Officer believed to be Defendant Marcus Porter signed his name and dated his signature as June 14, 2018.

78.     NSU's expulsion of Brown has permanently tarnished his academic record, potentially closing the door on numerous career and educational opportunities, and reducing his future earnings potential.

79.     NSU's expulsion of Brown has foreclosed the possibility of an enlightening and career enhancing study abroad program, to which Brown had already applied and been accepted prior to the conduct conference of June 15, 2017.

80.     The Defendants' violations of and sheer indifference to Brown's Constitutional rights has shattered Brown's confidence in American ideals.

81.     On or about February 19, 2018, Plaintiff Brown travelled from New Jersey to NSU to obtain his transcript.

82.     This trip followed multiple failed attempts to obtain his transcript through requests.

83.     In February of 2018, Plaintiff Brown was attempting to complete his degree in New Jersey, and thereby mitigate the damage caused to his reputation and future earnings by the Defendants.

84.     During the aforesaid trip to NSU, Plaintiff Brown went first to the building occupied by NSU Campus Police to announce his presence and purpose of visit.

85.     Brown then went to the registrar's office to obtain his transcript.

86.     While in the administrative offices to request his transcript, multiple NSU Campus Police Officers appeared and publicly arrested Brown in full view of several of his friends and former colleagues.

87.     NSU Campus Police put Brown in handcuffs and led him out of the registrar's office in full view of several of his friends and former colleagues.

88.    Brown was humiliated, denigrated and defamed by this incident and suffered severe emotional stress as a result.

89.    NSU Campus Police then transported Plaintiff Brown to the Campus Police Station where they informed him that he was being charged with trespassing and would be turned over to the Norfolk Police Department.

90.    Upon information and belief, NSU's expulsion of Brown prompted the actions of NSU Campus Police on February 19, 2018.

91.    Upon information and belief, an unidentified NSU official requested that NSU Campus Police arrest Brown on February 19, 2018.

92.    NSU Campus Police released Plaintiff Brown after being made aware by both Brown and Brown's attorney that Brown had reported in at the NSU Campus Police building and received permission to visit the registrar's office to obtain his transcript.

93.    Shaken and embarrassed, Brown left the NSU campus on February 19, 2018 still without his transcript.

94.    The incident rendered worthless an expensive and time consuming trip from New Jersey to Virginia for the purpose of obtaining his transcript.

95.    Defendants' expulsion of Brown has caused and continues to cause Brown significant reputational injury, significant professional injury, losses in earnings, substantial losses to future earnings and benefits, significant pain and suffering, medical expenses, embarrassment, anguish and severe emotional distress.

96.    Upon information and belief, monies remaining in Brown's student account were not returned before NSU shut down his student account.

12

## COUNT I: DENIAL OF DUE PROCESS IN VIOLATION OF THE UNITED STATES CONSTITUTION AND THE CONSTITUTION OF THE COMMONWEALTH OF VIRGINIA.

97.    The allegations contained in paragraphs 1 through 96 and all subsequent allegations are adopted and incorporated by reference as if set forth fully in this paragraph.

98.    The right to due process is enshrined in the Fourteenth Amendment to the United States Constitution.

99.    The right to due process is enshrined in Article 1 Section 11 of the Constitution of the Commonwealth of Virginia.

100.    Officials at government funded universities, like Defendants Porter and Johnson, owe a duty to provide students with sufficient due process in disciplinary proceedings.

101.    Officials at government funded universities, like Defendants Porter and Johnson, owe a duty to students to follow the university's disciplinary procedures.

102.    State sponsored universities, like NSU, owe a duty to students to establish rules and regulations governing disciplinary proceedings in such a way that Constitutional Rights are preserved.

103.    NSU's rules and regulations governing disciplinary proceedings are found within its Student Policy Handbook.

104.    The Commonwealth owes a duty to students to oversee state sponsored universities, like NSU, and ensure that disciplinary procedures provide sufficient due process.

13

105.   The manner in which Defendant Porter investigated and expelled Brown denied Brown his clearly established due process rights.

106.   Furthermore the manner in which Defendant Porter investigated and expelled Brown failed to adhere to NSU's published procedures for disciplinary proceedings.

107.   The flippant manner in which Defendant Johnson processed Brown's appeal denied him his clearly established due process rights.

108.   Furthermore, Defendant Johnson failed to follow NSU's published procedures governing appeal resolution.

109.   Defendants Porter and Johnson are both government officials.

110.   At all times relevant to this complaint, Defendants Porter and Johnson were acting under the color of law.

111.   Pursuant to 42 U.S.C. § 1983, Defendants Porter and Johnson are liable to Brown.

112.   NSU's procedures, even if followed, would have fallen short of the clearly established standards for minimum due process in student discipline hearings.

113.   The Commonwealth is likewise responsible for NSU's disciplinary procedures falling below the minimum due process required by the United States Constitution.

114.   For these reasons, NSU and the Commonwealth are liable to Brown.

115.   Brown has suffered damages as a direct and proximate result of these denials of his Constitutional right to due process.

## COUNT II: DENIAL OF FREEDOM OF SPEECH IN VIOLATION OF THE UNITED STATES CONSTITUTION AND THE CONSTITUTION OF THE COMMONWEALTH OF VIRGINIA.

116.   The allegations contained in paragraphs 1 through 114 and all subsequent allegations are adopted and incorporated by reference as if set forth fully in this paragraph.

117.   The right to free speech is enshrined in the First Amendment to the United States Constitution.

118.   The right to free speech is enshrined in Article 1 Section 12 of the Constitution of the Commonwealth of Virginia.

119.   As described above, Defendants Porter and Johnson are government officials.

120.   Upon information and belief, Defendant Porter's decision to expel Brown was based in part on Brown's Constitutionally protected speech.

121.   That Defendant Johnson's decision to deny Brown's appeal was based in part on Brown's Constitutionally protected speech.

122.   Pursuant to 42 U.S.C. § 1983, Defendants Porter and Johnson are liable to Brown for these abridgments of his Constitutional right to free speech.

123.   Brown has suffered damages as a direct and proximate result of these denials of his Constitutional right to free speech.

## COUNT III: GENDER DISCRIMINATION IN VIOLATION OF TITLE IX.

124.   The allegations contained in paragraphs 1 through 123 and all subsequent allegations are adopted and incorporated by reference as if set forth fully in this paragraph.

125.    Pursuant to Title IX of the Education Act of 1972, schools receiving federal financial assistance like NSU are prohibited from: excluding from participation in, denying benefits of, or otherwise subjecting students like Brown to "discrimination under any education program or activity" on the basis of sex. 20 U.S.C. § 1681 *et seq.*

126.    The Commonwealth has a duty to ensure that state supported schools, like NSU, comply with their duties under Title IX of the Education Act of 1972.

127.    As described herein, Brown, a male, was investigated and expelled from NSU following a student complaint that Brown violated the student conduct policy with threatening behavior.

128.    Over a year prior to Brown's expulsion, Brown complained to NSU officials that a female student had violated the student conduct policy with threatening behavior.

129.    Upon information and belief, no investigation or disciplinary action was ever taken against the aforementioned female student.

130.    Upon information and belief, NSU rarely if ever investigates or disciplines females for the conduct Brown was accused of committing.

131.    This disparate treatment of genders constitutes gender discrimination in violation of Title IX of the Education Act of 1972.

132.    Brown has suffered damages and continues to suffer damage as a direct and proximate result of this disparate treatment.

133.    Defendant NSU is liable to Brown under Title IX of the Education Act of 1972 for these damages.

134.    The Commonwealth is likewise liable to Brown under Title IX of the Education Act of 1972 for these damages.

16

## COUNT IV: DISCRIMINATION BASED JOINTLY ON RELIGION AND GENDER IN VIOLATION OF TITLE IX.

135.    The allegations contained in paragraphs 1 through 134 and all subsequent allegations are adopted and incorporated by reference as if set forth fully in this paragraph.

136.    Title IX forbids religiously based discrimination by institutions such as NSU when it is partially based on gender, ethnicity or national origin.

137.    Upon information and belief, Defendants Porter and Johnson based the decision to expel Brown in part or in whole upon his religious status as a Muslim.

138.    Upon information and belief, Defendants would have been less likely to expel Brown had Brown been of a different religious conviction.

139.    Upon information and belief, Defendants' interest in Brown's status as a Muslim during investigation and expulsion proceedings stems from a negative stereotype of Muslim males as being prone to violence.

140.    Therefore, upon information and belief, Defendants would have been less likely to expel Brown had Brown been a Muslim female.

141.    The aforesaid conduct constitutes gender discrimination by officials at NSU in violation of Title IX of the Education Act of 1972, for which NSU and the Commonwealth are liable

142.    Brown has suffered damages and continues to suffer damage as a direct and proximate result of this violation of Title IX of the Education Act of 1972.

## COUNT V: BREACH OF CONTRACT

143.   The allegations contained in paragraphs 1 through 142 and all subsequent allegations are adopted and incorporated by reference as if set forth fully in this paragraph.

144.   A contract, either express or implied, existed between Plaintiff Brown and NSU during the period of Brown's enrollment at NSU.

145.   Brown fulfilled his contractual obligations to NSU by paying his tuition, maintaining his grades, and abiding by NSU's policies to the best of his ability and understanding.

146.   Upon information and belief, Defendant NSU drafted its disciplinary procedures.

147.   The aforesaid disciplinary procedures constitute contractual terms between NSU and students like Brown.

148.   Certain procedures, safeguards, and rights contained within NSU's disciplinary procedures constitute contractual rights of NSU's students.

149.   NSU breached one or more of Brown's contractual rights during its investigation and expulsion of him in June of 2017.

150.   Therefore, NSU is in breach of its contract with Brown.

151.   Brown has sustained damages as a result of NSU's aforesaid breach of contract.

152.   In addition to the previously stated damages, Brown seeks restitution on the basis of breach of contract.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, by counsel, respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, in an amount of up to TEN MILLION DOLLARS ($10,000,000.00) as compensatory damages and punitive damages, together with attorney's fees including any expert fees pursuant to 42 U.S.C. Sec. 1988, costs of litigation, and interest from the date of expulsion, and any further relief that this Court may deem appropriate.

A JURY TRIAL IS DEMANDED

Dated: _14 June 2019_____

Respectfully Submitted

_Alastair C. Deans_

Alastair C. Deans (Va. Bar No. 83167)
P.O. Box 13915
Chesapeake, VA 23325
Telephone: (757) 412-9026
Email: alastaircdeans@gmail.com

Attorney for Plaintiff

**Dean of Students Office**
700 Park Avenue, Suite 318, Norfolk, Virginia 23504
Tel: (757) 823-2152 Fax: (757) 823-2297
Web: www.nsu.edu

June 14, 2017

Joseph Brown (433929)

15 Chester Ave Apt 2
Irvington NJ 07111

Dear Joseph,

On June 14, 2017, it was reported that you violated the *Code of Student Conduct*, specifically, *No. 20. Threatening behavior whether written or verbal, towards any member of the University community that causes an expectation of injury or implies a threat to cause fear.*

You have the right to have your case heard by a conduct officer through a conduct conference or the Student Conduct Board through a formal hearing. Please contact Marcus Porter at 823-2336 to further discuss. It is the responsibility of the respondent to notify witnesses of the date, time, and location of any conduct proceedings.

In the interests of the health, safety, and welfare of the University community, you have been placed on interim hall removal (effective immediately) pending the outcome of your conduct matter. If you are in the residence halls without permission or a police escort, you will be subject to arrest for trespassing. **You must move out of housing by 7:00pm today, June 14, 2017.**

We recognize that the receipt of this letter may cause some students to experience anxiety. Please examine our website which will provide additional information about the student conduct process to include student rights, possible outcomes, and sanctions. This information can be found at www.nsu.edu/student-affairs/student-judicial/.

Sincerely,

Marcus Porter, Student Conduct Officer

Cc:   Dr. Michael Shackleford, Vice President of Enrollment Management and Student Affairs
Tracci Johnson, Dean of Students
Dr. Faith Fitzgerald, Executive Director, Housing & Residence Life
Anthony Tillman, Resident Hall Director, Spartan Suites
Mecca Marsh, Director of Housing Operations, Spartan Suites
University Police, Investigations

COMPLAINT EXHIBIT 1

*Norfolk State University—An Equal Opportunity Employer*

# NSU

**NORFOLK STATE UNIVERSITY**

*Dean of Students Office*
700 Park Avenue, Suite 307, Norfolk, Virginia 23504
Tel: (757) 823-2152 Fax: (757) 823-2297
Web: www.nsu.edu

June 15, 2017

Joseph Brown,

I am writing to schedule a meeting to discuss the investigation of a report submitted to the Dean of Students Office.

On June 14, 2017, it was reported that you violated the following section(s) of the *Code of Student Conduct*:

- No. 20- *Threatening Behavior*

I have scheduled a student conduct conference for June 15, 2017, at 10:00 am at the NSU Campus Police Station. If the scheduled time is in direct conflict with a class, please call me at 757-823-2152 to reschedule.  At this meeting, you may ask any questions regarding the student conduct process.  If you fail to attend, a decision may be reached in your absence. If you are found responsible for the misconduct, a sanction will be issued at that time.

We recognize that the receipt of this letter may cause some students to experience anxiety. Please examine our website which will provide additional information about the student conduct process to include student rights, possible outcomes, and sanctions. This information can be found at www.nsu.edu/student-affairs/student-judicial/.

Sincerely,

Marcus Porter
Student Conduct Officer

COMPLAINT EXHIBIT 2

*Norfolk State University—An Equal Opportunity Employer*



**Dean of Students Office**
700 Park Avenue, Suite 318, Norfolk, Virginia 23504
Tel: (757) 823-2152 Fax: (757) 823-2297
Web: www.nsu.edu

June 15, 2017

**RESOLUTION**

Joseph Brown
433929

15 Chester Avenue Apt 2
Irvington, NJ 07111

Dear Joseph,

I have concluded your case of a reported violation of the _Code of Student Conduct_ specifically, No.20-_Threatening Behavior (Probation Violation)_.  I have found you responsible.  As such, the following sanctions are imposed:

> **Expulsion:** _Effective immediately, you are permanently separated from Norfolk State University._
>
> *_You must notify Norfolk State University Campus Police at 757-823-8102 prior to any campus visits._

You have five days from the date of this letter to appeal this decision.  An appeal form has been attached for your convenience.  Please return your appeal to deanofstudents@nsu.edu.

Sincerely,

Marcus Porter
Student Conduct Officer

Cc.   Dr. Michael Shackleford, Vice President of Student Affairs and Enrollment Management
Tracci Johnson, Dean of Students
Dr. Faith Fitzgerald, Executive Director, Housing & Residence Life
Anthony Tillman, Resident Hall Director, Housing & Residence Life
Mecca Marsh, Director of Housing Operations, Spartan Suites
Chief Troy Covington, University Police
Cassondra Gwathney, Acting Director of Financial Aid
Mike Carpenter, Registrar
Sandra Riggs, Bursar
Cary Lazarus, SpartanCard Manager
Dr. Vanessa Jenkins, Counseling Center

_Norfolk State University—An Equal Opportunity Employer_

COMPLAINT EXHIBIT 2



**Dean of Students Office**
700 Park Avenue, Suite 318, Norfolk, Virginia 23504
Tel: (757) 823-2152 Fax: (757) 823-2297
Web: www.nsu.edu

June 28, 2017

Joseph Brown  (0400667)

Subject:    Appeal from Disciplinary Sanction

This letter is in response to your appeal from a sanction imposed <u>at</u> a Student Conduct Conference on June 15, 2017. After carefully considering your request, your appeal <u>is</u> <u>denied</u>. This appeal decision is final.

Your sanctions remain as imposed:

-*Expulsion: Effective immediately, you are permanently separated from Norfolk State University.*

**You must notify Norfolk State University Campus Police at 757-823-8102 prior to any campus visits.*

I wish you the best in your future endeavors.

Sincerely,

Tracci K. Johnson
Dean of Students

Cc:   Dr. Michael Shackleford, Vice President of Student Affairs and Enrollment
      Management
      Marcus Porter, Student Conduct Officer
      Dr. Faith Fitzgerald, Executive Director, Housing & Residence Life
      Anthony Tillman, Resident Hall Director, Housing & Residence Life
      Mecca Marsh, Director of Housing Operations, Spartan Suites
      University Police, Investigation
      Cassondra Gwathney, Acting Director of Financial Aid
      Mike Carpenter, Registrar
      Sandra Riggs, Bursar
      Cary Lazarus, Spartan Card Manager
      Dr. Vanessa Jenkins, Counseling

*Norfolk State University—An Equal Opportunity Employer*

COMPLAINT EXHIBIT 14

# DEAN OF STUDENTS
## APPEAL RESPONSE RATIONALE

1. Appeal Conference Date: June 15, 2017

2. Meeting Attendee's: Joseph Brown (via email)

3. Appeal Officer: Tracci K. Johnson

## SUMMARY OF FACTS

# Reason for appeal (what did they check on the form):

☑ To determine whether the conduct conference/hearing was conducted fairly and in conformity with prescribed procedures.

☑ To consider new evidence unavailable during the original conduct conference/hearing.

☑ To consider whether the sanctions imposed were disproportionate to the violation.

**Appeal Decision**

☐ Approved
☐ Approved with revision
☑ Denied

**Rational for appeal revisions:**

The student was a threat to the Norfolk State University community. He threatened to break his roommate's jaw. In his previous conduct case he punched someone in the face. Based on the language and content of his appeal letter, I felt that his behavior was volatile and I did not want to compromise the safety of the student body.

COMPLAINT EXHIBIT 5

7/20/2017

Norfolk State University

Student Conduct

Student Conduct    About    Student Conduct Process    Policies    Student    Reporting    Forms    Contact Us

▶ **Violations**

1. **Abuse of student conduct system** to include but not limited to providing false information during the student conduct process and/or not completing sanctions within allocated time period.
2. **Abuse of safety equipment** to include but not limited to tampering with or engaging fire alarms, extinguishers or smoke detectors.
3. **Acts of dishonesty** to include but not limited to furnishing false information to University officials or forgery of any University document. For academic dishonesty, refer to Academic Dishonesty Procedures.
4. **Alcohol** the use, **possession or distribution** of alcoholic beverages or paraphernalia.
5. **Computer Misuse-** Refer to Acceptable Use of Technological Resource Policy.
6. **Conduct that threatens or endangers the health or safety of any person including one's self.**

COMPLAINT EX. 6

7/20/2017

https://www.nsu.edu/student-affairs/student-judicial/student-conduct-process

Student Conduct Process

7. **Gambling** for money, in any form on University property.
8. **Dating Violence**
9. **Domestic Violence**
10. **Drugs the use, possession or distribution** of illegal drugs or misuse of prescription drugs and other controlled substances or drug paraphernalia.
11. **Disruptive behavior** that interferes with University sponsored events/activities; teaching, learning, administration, research; and/or University operations.
12. **Failure to comply with directions** of University employees or law enforcement officers.
13. **Harassment** to include but not limited to bullying/cyber-bullying, intimidation and/or hate crimes.
14. **Hazing**- Hazing includes, but is not limited to any situation which; creates a risk of physical injury; causes embarrassment and/or discomfort; involves harassment and/or humiliation; causes psychological or emotional distress; involves degradation and/or ridicule of an individual or group; involves or includes the 'willful destruction or removal of public or private property; involves the expectation that new/perspective members will participate in an activity, but full members will not.
15. **Obscene behavior** to include but not limited to public sexual acts or indecent exposure.
16. **Retaliation** against any person or group who makes a complaint, cooperates with an investigation, or participates in the resolution process.
17. **Sexual misconduct** - Refer to BOV Policy #5 (2014) Sexual Misconduct Policy : Refer to Admin Policy #
18. **Stalking** is when a person, on more than one occasion, engages in any behavior or conduct directed at another person with the intent to place that other person in reasonable fear of harm, death, criminal sexual assault, or bodily injury to that person or to that person's family or household member. **Cyber-stalking** is form of stalking or harassment that involves the intentional act of using the Internet to cause someone emotional distress.
19. **Theft** includes the use, removal or possession of University/individual property without entitlement or authorization.
20. **Threatening behavior** whether written or verbal, towards any member of the University community that causes an expectation of injury or implies a threat to cause fear.
21. **Unauthorized access or entry** to any University building.
22. **Unauthorized recording and/or distribution** to include but not limited to pictures, audio or videos of any person without their explicit permission or consent.
23. **Weapons**-Refer to *Violence Prevention Policy.*
24. **Vandalism** includes but is not limited to destroying or damaging University property or property of another person.
25. **Violence to persons** includes but is not limited to intentionally or recklessly causing harm to any person.
26. **Violating federal, state or local laws** that legitimately affect the University's interest.
27. **Violating any published Board of Visitors or University policies or rules.**

▼ **Procedures**

**Procedures**
The below procedures provide a general overview of student conduct proceedings; however, these procedures are flexible based on the severity of the situation.

Any member of the University community may file a report against a student or student organization for violations of the *Code of Student Conduct*. All allegations should be submitted through an online incident report form or student summons (NSU Police Department). The student

COMPLAINT EX 6
PG 2

7/20/2017

Student Conduct Process

conduct officer may act on notice of a potential violation whether a formal report is made.

Students should be aware the criminal (Police) and student conduct (University) processes are separate but may occur concurrently.

## Informal Resolution

### Step 1. Investigation

Upon receipt of the incident report, a student conduct officer will begin an investigation that will include interviews of the respondent, the complainant and/or others as necessary. Additionally, all documentary and physical evidence will be obtained and reviewed. Upon completion of the investigation, the following may occur:

* The student conduct officer determines there is insufficient information and the case is closed.
* The student conduct officer determines there is sufficient information and proceeds with scheduling a conduct conference (step 2).

### Step 2. Notification

The respondent will receive a formal complaint of a violation through written notice.  The notice will be delivered by one or more of the following methods: emailed to the student's University-issued account and/or mailed to the permanent address according to the University's record. The letter of notice will include:

* The reported violation(s) citing the *Code of Student Conduct.*
* The date, time, and location of the conference.
* The rights of the respondent.

### Step 3. Conference

During the conference, the student conduct officer will present the findings to the respondent.  As a result, the following may occur:

* The respondent is found not responsible and the case is closed.
* The respondent accepts responsibility and/or the findings for the violation and the student conduct officer imposes sanctions.</li>
* The respondent denies responsibility and/or rejects the findings for the violation but has the right to appeal the decision and/or sanctions imposed by the student conduct officer.
* The respondent denies responsibility for the violation and/or rejects the findings and the misconduct could result in expulsion, suspension and/or removal from housing.  The student conduct officer will then refer the case to the Student Conduct Board for formal resolution through an administrative hearing.

A respondent placed on interim suspension may request to have their case heard by the conduct officer through a conduct conference or referred to the Student Conduct Board.

The student conduct officer, at his or her discretion, may refer a case to the Student Conduct Board for resolution.

If the respondent fails to attend the conduct conference, the student conduct officer may render a decision based on the evidence available. The respondent will then forfeit their right to appeal the decision and/or sanction(s) imposed by the student conduct officer.

COMPLAINT_EX 6

7/20/2017

Student Conduct Process

**Formal Resolution**

The University has established appropriate student conduct panels to provide hearings concerning reported violations of the *Code of Student Conduct* that could result in expulsion, suspension and/or removal from housing.

1. *Notification*

A notice will be made in writing and delivered by one or more of the following methods: emailed to the student's University-issued email account; mailed to the permanent address according to the University's record. The letter of notice will include:

- The reported violation(s) citing the *Code of Student Conduct*.
- The date, time, and location of the hearing.
- The rights of the respondent.

2. *Hearing*

The student conduct officer will schedule a hearing with the student conduct panel; no more than ten (10) business dates after the conduct conference. This may be extended when reasonably necessary. If the respondent wishes to request a delay, he/she must notify the student conduct staff within two (2) business days of the scheduled hearing.

The student conduct panel for each hearing will be composed of five (5) members from the University to include employees and students. Each student conduct panel must include at least three (3) students. All members of the student conduct panel will be selected from the student conduct board and participate in mandatory training covering all aspects of the conduct process. Members of the University must apply to become a member of the student conduct board. Students serving must be in good academic standing with no serious conduct violations at the University. All appointments are subject to approval by the dean of students or designee and serve one-year renewable terms.

The Chief Justice or designee will serve as the chair for each hearing panel. The chair of the panel will conduct hearings according to the following guidelines:

- Hearings are closed to the public.
- Hearings are tape-recorded; however, deliberations of the hearing panel will remain private.
- Incidents involving more than one respondent, the panel will jointly conduct a hearing. Separate findings will be made for each respondent. At the discretion of the student conduct officer, individual hearings may be permitted.
- The complainant, respondent and advisors will be allowed to attend the entire portion of the hearing except for the deliberation and findings. Only in cases involving violence or sexual misconduct, as it relates to Title IX, will the complainant be advised of the outcome.
- All parties will have the privilege of questioning witnesses. Witnesses will only attend the portion of the hearing in which they are presenting information.
- Advisors are not permitted to speak or participate directly in any student conduct hearing unless permitted by the chair of the panel.
- The panel may only rely on oral and written statements of witnesses and written reports/documents.
- After the hearing, the panel will determine, by majority vote, using a preponderance of the evidence (whether it is more likely than not) the respondent violated the *Code of Student Conduct* and recommend sanctions.

https://www.nsu.edu/student-affairs/student-judicial/student-conduct-process

COMPLAINT EX 6
PG 4

7/20/2017

Student Conduct Process

- The chair of the panel will provide a written summary of testimony, findings of facts (evidence), and rationale for the decision. This report will be sent to the student conduct officer within two (2) business days of the hearing. A written decision will be sent to the respondent within two (2) business days after receiving the hearing panel's report.

If the respondent fails to attend the hearing, the Student Conduct Board may render a decision based on the evidence available. The respondent will then forfeit their right to appeal the decision and/or sanction(s) imposed by the Board.

There are certain times of the year and possible extenuating circumstances that may remove the option of the student conduct panel. During this time, a student conduct officer will adjudicate cases. The option of a student conduct panel may be removed on the following occasions:

1. When the student conduct board is participating in training.
2. When the University is not in session.
3. During the final two weeks of the fall or spring semester.
4. During summer sessions.

▼ Appeals

Appeal forms may be submitted online by visiting https://www.nsu.edu/Assets/websites/student-affairs/sa-documents/Student-Conduct-Appeal-Form.pdf. The basis for the appeal must be one (or more) of the reasons shown above. The notice of appeal must contain, at a minimum, a statement of grounds for appeal and a summary statement of the facts supporting such grounds.

Upon receipt of the appeal, the dean of students'* will review and provide a written decision within five (5) business days. The respondent may request a meeting with the dean of students to further discuss the appeal; however, the decision is made based on the written information submitted and is final.

*The vice president for student affairs has designated the dean of students as the appellate officer for student conduct matters.

▼ Academic Matters

A formal grievance may be filed in the Dean of Students Office. Every attempt is made to ensure that the complainant has sought resolution of the grievance at the appropriate levels.

COMPLAINT EX 6
PG 5

7/20/2017

Student Conduct Process

**Grade Appeals**

The instructor has the responsibility for evaluating coursework and determining grades; however, the student has the right to appeal a grade believed to be in error. The appeal process may involve the following steps and may be resolved at any level:

- The student confers with the instructor involved.
- The student and instructor (preferably together) confer with the chairperson of the department offering the course.
- The student and instructor (preferably together) confer with the dean of the school in which the department is housed.
- When the above steps do not resolve the issue, the student may initiate a formal written appeal through the Faculty-Student Grievance Committee to the Provost and Dean of Students Office for its review and recommendation.

Appeals should not be taken lightly by either the student or the instructor. The student is responsible for verifying the accuracy of his or her academic records. Grade appeals should be made immediately after the grade in question is received. No appeals will be considered after one year has elapsed or after graduation, whichever is earlier.

**Academic Dishonesty**

Cases involving academic dishonesty are immediately sent to the Faculty-Student Grievance Committee if the student denies responsibility. If the student accepts responsibility, the instructor may issue an appropriate grade sanction and notify the Dean of Students Office to place the student on probation.

If it is found that sufficient documentation is present to warrant a hearing, the Dean of Students Office will request to convene a hearing with the Faculty-Student Grievance Committee. The Faculty-Student Grievance Committee is comprised of faculty representatives from the schools and colleges.

The panel for each academic dishonesty hearing will be composed of three (3) members to include two (2) faculty and one (1) student. The chair of the panel (non-voting) will conduct the hearing according to the guidelines established for student conduct hearings. The decision of the Faculty-Student Grievance committee is final and cannot be appealed.

▼ **During the Conduct Process**

**Responsibilities**

All students are responsible for being knowledgeable about the information contained in the Code of Student Conduct policy. An electronic version of this policy can be found online at https://www.nsu.edu/president/policies/index. Hard copies are available upon request the office for student conduct located in Suite 316, Student Services Center.

University email serves as the official communication with students. It is the responsibility of all students to maintain and monitor their University email regularly to stay abreast of student conduct proceedings.

*Rights of the Accused (Respondent)*

COMPLAINT EX 6

P. 6

https://www.nsu.edu/student-affairs/student-judicial/student-conduct-process

**Student Conduct Process**

- The right to confidentiality of educational records pursuant to Family Educational Rights and Privacy Act (FERPA) of 1974.
- The right to be informed of the charges against him/her in writing.

- The right to have a support person or advisor present during student conduct proceedings. This person may not actively participate in the hearing but may give advice to the complainant.
- The right to request, in advance, a copy of the incident report.
- The right to call a reasonable number of witnesses. Names of the witnesses must be provided to the Dean of Students Office at least one day prior to the hearing.
- The right not to appear or to remain silent at the hearing. In the event the respondent does not appear at the hearing, after proper notification, the evidence in support of the violation will be presented, considered and adjudicated.
- The right to a fair and impartial hearing.

*Rights of Victims (Complainant)*

- The right to have a support person or advisor present during student conduct proceedings. This person may not actively participate in the hearing but may give advice to the complainant.
- The right to be informed of the outcome in cases involving violence and sexual misconduct as it relates to Title IX.
- The right to a fair and impartial hearing.

*Rights of Complainant and Respondent (Title IX/Sexual Misconduct)*

- Respondents of sexual misconduct have the right to a student conduct hearing and the right to identify and produce witnesses who may have information relevant to the complaint.
- The parties involved may bring an advocate, advisor or support person to any meeting with the student conduct officer/panel.
- Parties involved may present their case before the hearing panel by submitting documents and other relevant evidence. It should be noted that while each party will have the opportunity to present his/her case, the student conduct officer has the responsibility to identify and obtain any additional evidence and/or witnesses relevant to the grievance.
- Attorneys will not be permitted to personally participate in University student conduct proceedings.
- Student conduct: hearings do not replace or substitute criminal prosecutions and students who choose student conduct hearings are also encouraged to seek justice through the criminal justice system and/or civil courts as appropriate.

Refer to BOV Policy # 05 (2015) Title IX: Sexual Violence, Discrimination, Harassment, and Retaliation



## Sanctions

COMPLAINT EX 6
PG 7

7/20/2017

https://www.nsu.edu/student-affairs/student-judicial/student-conduct-process

Student Conduct Process

**Warning:** An official written notice that the student has violated the Code of Student Conduct.

**Disciplinary Probation:** Disciplinary probation is for a specific length of time. Mandatory conditions may be imposed and may include, but not limited to the following: loss of good standing and/or denial of the privilege to hold a position of leadership or responsibility in any University student organization or activity. If the student is found in violation of the Code of Student Conduct while on disciplinary probation, the University may impose additional sanctions.

**Educational Project:** The requirement to attend, present or participate in a program related to the violation. It may also require writing reflective papers.

**Community Service:** The requirement to complete supervised service.

**Counseling Referral:** The requirement to visit the Counseling Center and complete a screening within five (5) business days of the respondent's conference/hearing. Upon completion of the screening, if any additional services are recommended they must be completed within the timeframe provided by the Counseling Center.

**Fine:** A sum imposed as a result of an offense; the sum must be reasonable and may be imposed depending on the severity of the violation.
Loss of Privilege: The denial of specified privileges for a designated period of time.

**Restitution:** The repayment for damage to University property or facilities; payment for damage to the property or person of a member of the University community, guests of the University, and/or other appropriate third parties; repayment of misappropriated or misused University funds. Restitution must be paid by cashier's check or money order. A disciplinary hold will be placed on the respondent's record until payment is made; however, if payment is not made by the end of the semester, the respondent's account will be charged.

**University Housing Reassignment:** The reassignment to another residential hall as determined by the Office of Housing & Residence Life.

**University Housing Visitation Restriction:** The loss of privilege to host any guests in the lobby of the student's residence hall and/or individual room.

**University Housing Removal:** The student's privilege to live or visit any residential hall is permanently revoked.

**Suspension:** Separation from the University for a specified amount of time. The student will be required to vacate the campus with 24 hours of notification of this action. During the suspension period, the student is not permitted on University property, events or activities.

**Expulsion:** The permanent separation of a student from the University.

**Other Sanctions:** Additional sanctions may be designed as deemed appropriate to the offense.

**Interim Actions:** The Dean of Students or designee may impose restrictions and/or separate a student from the University community pending the outcome of a hearing to protect the interests of the health, safety and welfare of the University community, or to ensure the student's safety and well-being. These actions can include but are not limited to no-contact orders, amending a student's schedule, hall relocation and/or interim suspension. Interim suspension is the temporary separation of a student from the University. If an interim suspension is imposed, the respondent may request a meeting with the dean of students or designee to discuss the interim suspension. The Dean of Students may uphold or lift the interim suspension after meeting with the respondent; however, this decision is final. If the interim suspension is upheld, the respondent will be required to vacate the campus immediately. At the discretion of the dean of students or designee, alternative coursework options may be provided.

COMPLAINT EX 6
DL 8

7/20/2017

Student Conduct Process

https://ww.nsu.edu/student-affairs/student-judicial/student-conduct-process

NORFOLK STATE UNIVERSITY

About NSU | Administration | Academics | Research | Student Life | Athletics | Alumni | Giving to NSU | Policy Library

©2017 Norfolk State University, 700 Park Avenue, Norfolk VA 23504 USA | NSU Operator: 757-823-8600

9/9

COMPLAINT EX 6
DL 0